UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ARMANDO SOLIS,<br><br>　　　　Defendant. | No.  2:04-CR-00377-MCE<br><br>**ORDER** |

Defendant Armando Solis ("Defendant") pled guilty in 2007 to Conspiracy to Possess Methamphetamine with Intent to Distribute in violation of 21 U.S.C. §§ 846 and 841(a)(1).  He was subsequently sentenced to a term of 108 months imprisonment, and his 60-month term of supervised release began on January 5, 2015.[1]  On January 26, 2016, the Court received a Petition for Warrant or Summons for Offender Under Supervision ("Petition") seeking a warrant for Defendant's arrest and alleging that Defendant had violated the conditions of his supervised release.  ECF No. 99.  The Court held an evidentiary hearing on June 30, 2016, at which Defendant denied the charges set forth in the Petition and the Government put on evidence in support thereof.  Upon consideration of the evidence before the Court and the arguments of counsel, the Court SUSTAINS those charges.

---

[1] Defendant's sentence was reduced from 108 to 87 months at approximately the same time.

**THE PETITION**

According to the Petition, beginning in late 2013, the Drug Enforcement Administration ("DEA"), along with state and local law enforcement agencies, began investigating a Drug Trafficking Organization ("DTO") headed by one Pedro Fuentes. Through the course of the investigation, agents were able to identify several individuals associated with the Fuentes DTO, one of which was Defendant. More specifically, the Petition alleges that a number of phone calls were intercepted on June 4, 2015, between Fuentes and Defendant where the two men discussed the quantity and price of methamphetamine Defendant would purchase from Fuentes. They also agreed that Fuentes would deliver the drugs to Defendant later that day. That same day at approximately 1:13 p.m., agents observed Fuentes arrive at Defendant's residence, where the two men exchanged items in the front yard before Fuentes left. Less than two weeks later, on June 16, 2016, agents intercepted additional phone calls wherein Defendant and Fuentes arranged an additional meeting so Defendant could purchase another pound of methamphetamine from Fuentes. Based on the above allegations, the Petition sets forth four charges:

> **Charge 1 NEW LAW VIOLATION**
> On or about June 4, 2015, through June 16, 2015, the offender committed a violation of section 21 U.S.C. § 846 and 841(a)(1) - Conspiracy to Possess Methamphetamine With Intent to Distribute, a Class A Felony. This conduct is in violation of the mandatory condition directing the offender not to commit another federal, state, or local crime.
>
> **Charge 2 NEW LAW VIOLATION**
> On or about June 4, 2015, the offender committed a violation of section 21 U.S.C. § 843(b) – Unlawful Use of a Communication Device, a Class E Felony. This conduct is in violation of the mandatory condition directing the offender not to commit another federal, state, or local crime.
>
> **Charge 3 NEW LAW VIOLATION**
> On or about June 16, 2015, the offender committed a violation of section 21 U.S.C. § 843(b) – Unlawful Use of a Communication

Device, a Class E Felony. This conduct is in violation of the mandatory condition directing the offender not to commit another federal, state, or local crime.

**Charge 4 ASSOCIATION WITH PERSONS ENGAGED IN CRIMINAL ACTIVITY**
On or about June 4, 2015, through June 16, 2015, the offender engaged in a series of telephone conversations with Pedro Fuentes discussing the quality, amount and price of methamphetamine he could purchase from Fuentes. They also organized a meeting at the offender's residence where Fuentes supplied the offender with methamphetamine. This conduct is in violation of standard condition number 9 directing the offender not to associate with persons engaged in criminal activity.

## ANALYSIS

Defendant appeared before the Court on June 30, 2016, and denied the above charges, after which the Government offered its evidence in support thereof. Pursuant to 18 U.S.C. § 3583(e)(3), in order to revoke a Defendant's term of supervised release, this Court must find by a preponderance of the evidence that Defendant violated one of the conditions of that release. See, e.g., United States v. Verduzco, 330 F.3d 1182, 1184 (9th Cir. 2003); Johnson v. United States, 529 U.S. 694, 700 (2000) ("Although such violations often lead to reimprisonment, the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt.").

In this case, the Government offered the testimony of Defendant's Probation Officer, two detectives who had served on an interagency task force investigating Fuentes, and a DEA agent who was directly involved in intercepting the phone calls between Fuentes and Defendant. Each of these witnesses testified credibly, based on his or her personal knowledge. The Probation Officer established that Defendant resided with his parents at an address on Pear Street in Live Oak, California. The detectives testified that, on June 4, 2015, as part of their surveillance of Fuentes, officers

followed him from Yuba City to Live Oak where Fuentes parked at Defendant's Pear Street address. Fuentes exited his vehicle with a satchel and Defendant met him in front of the house. The satchel is relevant because, as one of the officers testified, whenever Fuentes was engaged in suspected drug deals, he carried the same (or an identical) bag. Moreover, the DEA agent testified that when they eventually executed a number of search warrants as to the Fuentes DTO, they uncovered a satchel similar to the one Fuentes wore to meet Defendant, and it contained methamphetamine, cocaine, and an electronic scale. The Government offered photographs to corroborate the testimony regarding the meeting between Defendant and Fuentes.

       The Government then put on testimony with regard to the intercepted conversations between Defendant and Fuentes, which support the conclusion that they were using telephones to arrange a methamphetamine transaction. More specifically, the DEA agent indicated that calls he intercepted on June 4, 2016, gave him reason to believe that Fuentes would be engaging in a drug transaction, so he called one of the task force detectives to advise that Fuentes should be followed. Although Defendant and Fuentes spoke in "code," the phrases they used were common to DTOs in general and to the Fuentes DTO in particular, such that agents were familiar with the terminology. For example, in one conversation, Defendant advised Fuentes that a third party "was getting upset [U/I] because the clothing was wet." Gov. Ex. B(3). Although seemingly innocuous, the DEA agent testified that the word "wet" has a specific meaning as it relates to methamphetamine trafficking and references the perceived purity of the drug. In that same conversation, Fuentes refers to "my aunt in the other one . . . in the Mexican one." Id., B(4). The Fuentes DTO uses the word "Mexican" to refer to a kilogram of cocaine, and it might refer to a pound quantity as an "American."

       This latter term came up in a subsequent conversation intercepted on June 16, 2016:

> FUENTES:      Man, what are you going to need?
> DEFENDANT:    No, uh, you already know. What we

| | | |
|---|---|---|
| 1 | | talked about yesterday. |
| 2 | FUENTES: | But do you have the bills?  Because you know that I can't be lending right now.  Since that guy told me [U/I] |
| 3 | | |
| 4 | DEFENDANT: | How much? |
| 5 | FUENTES: | Just the . . . the doll? |
| 6 | DEFENDANT: | What doll? |
| 7 | FUENTES: | The American one.  The one that . . . the . . . the . . . for your friend or what? |
| 8 | | |
| 9 | DEFENDANT: | Yeah. |
| 10 | FUENTES: | Uh, do you have the bills with you, the tickets? |
| 11 | DEFENDANT: | Which . . . which ones? |
| 12 | FUENTES: | Uh, those tickets because that guy told me not to lend anything right now. |
| 13 | | |
| 14 | DEFENDANT: | Oh. |
| 15 | FUENTES: | Uh-huh. |
| 16 | DEFENDANT: | Uh . . . |
| 17 | FUENTES: | What do you think? |
| | | [VOICES OVERLAP] |
| 18 | DEFENDANT: | [U/I] you just lost us. |
| 19 | FUENTES: | Huh? |
| 20 | DEFENDANT: | You just lost me. |
| 21 | FUENTES: | Why? |
| 22 | DEFENDANT: | [U/I] How . . . how can I tell you? |
| 23 | FUENTES: | Let's see, how do you want to do it, or what |
| 24 | | |
| 25 | | [END OF CALL] |

Id., B(24-25).  According to the DEA agent, "bills" and "tickets" refer to money, while a "doll" is word used to refer to methamphetamine.  In this instance, then, Defendant and Fuentes were discussing a one pound methamphetamine sale, but Fuentes advised that

he could not "lend," or front the drugs without receiving payment.[2]

Intercepted phone calls between Fuentes and his girlfriend at approximately the time Fuentes was frequenting Defendant's residence on June 4, 2016, support the Government's position as well. Fuentes' girlfriend asks him where he is, and he replies, "Here arriving at [U/I]," which the testifying agent reasoned meant Fuentes was arriving at Defendant's house. The girlfriend then asked who Fuentes was with and he said, "Uh, just a bunch of work here. It's what I h . . . have with me next to me. Crystal." Id., C(2). "Work" is a coded term for drugs in general, and "crystal" refers more specifically to methamphetamine, although it is more of a slang term than part of a code. It is thus reasonable to infer that Fuentes was telling his girlfriend that he had arrived at Defendant's home with methamphetamine. Especially given the large quantities (one kilogram and one pound) Defendant and Fuentes discussed, the evidence as described herein is sufficient to support the conclusion that Defendant was conspiring to possess methamphetamine with the intent to distribute in violation of 21 U.S.C. § 846 and 841(a)(1). Moreover, the Government identified at least two occasions, first on June 4 and then on June 15, 2016, when Defendant used the phone in furtherance of the conspiracy. All of the foregoing evidence, taken together, is sufficient to sustain the charges against Defendant.

For his part, Defendant did not offer any evidence of his own. He argued, however, that the charges should not be sustained because agents did not actually see any drugs change hands and because there are alternative innocent explanations for the recorded conversations.[3] Regardless of whether there is direct evidence of a drug exchange, however, there is ample circumstantial evidence that Defendant and Fuentes

---

[2] As to the foregoing conversations between Fuentes and Defendant, the DEA agent testified that he could identify Defendant's voice on the original calls because he had identified Defendant via surveillance and had monitored Defendant's telephone calls from the jail, which rendered him capable of comparing the voices.

[3] Defendant also argues that the fact that Probation searched his house, but didn't discover any drugs and that Defendant never submitted a dirty drug test supports the theory that Defendant was not buying or selling drugs. While that evidence certainly supports the conclusion that Defendant was not using drugs, it does not require a finding that he was not otherwise conspiring to purchase the drugs to distribute to third parties.

were conspiring to arrange such a transaction.  Moreover, Fuentes' intercepted phone call with his girlfriend supports the conclusion that he arrived at Defendant's house with the methamphetamine in hand.  This, coupled with the other calls, is more than enough to support the conspiracy charge by a preponderance of the evidence.

Defendant's alternate explanations for the intercepted phone calls find no support in the record.  Defendant would have the Court believe that when the men discussed "wet" clothing, they were referring to boating and that the references to "the American" and "the Mexican" were actually references to people.  Defendant's unsupported arguments do not comport with the use of those phrases in the context of the calls, and the Government's explanation, which it supported with the testimony of an agent familiar with DTO "codes," is well taken.

## CONCLUSION

For the reasons set forth above, the charges set forth against Defendant in the Petition for Warrant or Summons for Offender Under Supervision ("Petition") (ECF No. 99) are SUSTAINED.  A disposition hearing is hereby set on July 28, 2016, at 10:00 a.m. in Courtroom 7.

IT IS SO ORDERED.

Dated: July 12, 2016

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE